UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

UNITED STATES OF AMERICA, NEW YORK STATE,
and the CITY OF NEW YORK, *ex rel.* FRANCES
ALDANA,

                                 Plaintiffs/Relator,     23 CIV 8078 (LDH) (PK)

                -against-

NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY, VELOCITY ARCHITECTURE &
ENGINEERING GROUP, D.P.C., BRAVO VBC
GROUP, LLC, JOHN DOES I-X,

                                Defendants.

------------------------------------------------------------------------ x

### DEFENDANT NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'/RELATOR'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

***MURIEL GOODE-TRUFANT***
*Corporation Counsel of the City of New York*
*By: Belina Anderson*
*Assistant Corporation Counsel*
*100 Church Street*
*New York, NY 10007*
*Attorney for Defendant*
*New York City School Construction Authority*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT .......................................................................... 1

THE PARTIES ..................................................................................................... 1

STATEMENT OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT AND PROPOSED COMPLAINT

    A.   SCA's Sources of Funding/Budget ................................... 2

    B.   SCA's Operations .............................................................. 2

    C.   Original Plaintiff-Relator Frances Aldana ....................... 2

    D.   Proposed Plaintiff-Relator Jesenia Polanco ..................... 4

    E.   Proposed Plaintiff - Relator Julieta Cussino .................... 6

    F.   Proposed Plaintiff-Relator Deena Lettas ......................... 7

    G.   Non-Party and Former SCA Employee Seth Alter ................................................................................ 8

    H.   "Specific Examples of Fraud" .......................................... 8

CAUSES OF ACTION IN THE PROPOSED AMENDED COMPLAINT

    No. 1:  Violations of the Federal False Claims Act ..................................................... 10

    No. 2:  Retaliation in Violation of the Federal False Claims Act ...................................... 11

    No. 3:  Retaliation in Violation of NYS False Claims Act ............................................... 11

    No. 4:  Violations of the NYS False Claims Act ...................................................... 12

    No. 5:  Retaliation in Violation of the NYC False Claims Act ............................................... 12

    No. 6.  Accounting .......................................................... 12

**Page**

PROCEDURAL HISTORY ........................................................................13

STANDARD OF REVIEW........................................................................13

ARGUMENT...........................................................................................14

POINT I

THE ALLEGATIONS IN THE PROPOSED
COMPLAINT ARE WOEFULLY INSUFFICIENT
TO STATE A CLAIM UNDER THE FEDERAL
OR STATE FALSE CLAIMS ACTS.........................................14

    A.    Relators' Allegations of Fraud.........................................15

    B.    Federal FCA Caselaw ....................................................16

    C.    SCA Did Not Cause Any Contractors to
        Submit False Claims......................................................17

POINT II

SCA CANNOT BE LIABLE UNDER THE STATE
OR CITY FCA...........................................................................19

POINT III

THE PROPOSED COMPLAINT DOES NOT
STATE RETALIATION CLAIMS UNDER ANY
OF THE FALSE CLAIMS ACTS ..............................................19

    A.    Aldana...........................................................................20

    B.    Polanco .........................................................................20

    C.    Cussino .........................................................................20

    D.    Lettas............................................................................21

POINT IV

THE PROPOSED COMPLAINT FAILS TO
STATE A CLAIM FOR AN ACCOUNTING ..............................22

CONCLUSION.......................................................................................24

CERTIFICATION OF WORD COUNT .....................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*Anemone v. Metro. Trans. Auth.*,
    629 F.3d 97 (2nd Cir. 2011) ....................................................................................22

*US. ex rel. Arnstein v. Teva Pharmaceuticals USA, Inc.*,
    2019 U.S. Dist. LEXIS 35748 (S.D.N.Y. Feb. 27, 2019)..........................................17

*Burch v. Pioneer Credit Recovery, Inc.*,
    551 F.3d 122 (2d Cir. 2008) ...................................................................................13

*US. ex rel. Chorches for Bankruptcy Estate of Fabula v. Am. Med Response, Inc.*,
    865 F.3d 71 (2d Cir. 2017) ........................................................................14, 16, 19

*United States ex rel. Escobar v. Universal Health Servs.*,
    842 F.3d 103 (1st Cir. 2016)..................................................................................1, 18

*Feiner v. Ostreicher*,
    241 AD3d 1281 (2nd Dep't 2025).............................................................................23

*Foman v. Davis*,
    371 U.S. 178 (1962)..................................................................................................13

*US. ex rel. Foreman v. AECOM*,
    19 F.4th 85 (2d Cir. 2021) .......................................................................................18

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009) .....................................................................14

*Hopkins v. Ackerman*,
    2023 N.Y. Misc. LEXIS 1832 ..................................................................................23

*United States ex rel. Kester v. Novartis Pharms. Corp. (Kester I)*,
    23 F. Supp. 3d 242 (S.D.N.Y. 2014) .......................................................................17

*Lawrence v. Int'l Bus. Mach. Corp.*,
    U.S. Dist. LEXIS 120804 (S.D.N.Y. Aug. 1, 2017).............................................19, 21

*LMEG Wireless, LLC v Farro*,
    190 AD3d 716 (2nd Dep't 2021)..............................................................................23

*Lowrance v. Achtyl*,
    20 F.3d 529 (2d Cir. 1994) .......................................................................................22

| **Cases** | **Pages** |
|---|---|

*Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle,*
429 U.S. 274 (1977)..............................................................................................22

*United States ex rel. O'Toole v. Community Living Corp.,*
2020 Westlaw 2512099 (S.D.N.Y. May 14, 2020) ............................................14, 17

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon,*
2023 U.S. Dist. LEXIS 140674 (S.D.N.Y. July 14, 2023)........................................22

*United States ex rel. Pepe v. Fresenius Medical Care Holdings,*
2024 U.S. Dist. LEXIS 198407 (E.D.N.Y., Oct. 31, 2024) (Hall, D.J.)...................17

*Polanco v. New York City School Constr. Auth.,*
25-cv-05815 (BMC) .........................................................................................6, 20

*United States ex rel. Schutte v. SuperValu, Inc.,*
598 U.S. 739 (2023)..............................................................................................16

*State of New York ex rel. Seiden v. Utica First Ins. Co.,*
96 A.D.3d 67 (1st Dep't 2012), *lv denied* 19 NY3d 810 (2012) ...............................16

*TechnoMarine SA v. Giftports, Inc.,*
758 F.3d 493 (2d Cir. 2014) .................................................................................24

*United States ex rel. Tessler v. City of New York,*
712 Fed. Appx. 27 .................................................................................................14

*Chen ex rel. U.S. v. EMSL Analytical, Inc.,*
966 F.Supp.2d 282 (S.D.N.Y. 2013) ......................................................................16

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
579 U.S. 176 (2016)..........................................................................................14, 18

*Village of Kiryas Joel v County of Orange,*
144 AD3d 895 (2nd Dep't 2016)............................................................................23

**<u>Statutes</u>**                                                                           **<u>Pages</u>**

28 USC § 1983...............................................................................................8

31 U.S.C. § 3729.........................................................................................1, 17

31 USC § 3729(a)(l)(A)..............................................................................10, 16

31 USC § 3729 (a)(l)(B)..............................................................................10, 17

31 USC § 3729(a)(1)(C)...............................................................................16

31 USC § 3730(h).........................................................................................11

City FCA § 7-805.........................................................................................12

Civil Service Law § 15-b.............................................................................8

FCA § 3730[h][1].........................................................................................19

Fed. R. Civ. P. 9(b)....................................................................................1, 14, 17

Fed. R. Civ. P. 15(a)(2)..............................................................................13

Local Rules Rule 7.1(c)..............................................................................25

NYC Admin. Code §7-801...........................................................................12

NYC Admin. Code § 8-101..........................................................................6

NYS Executive Law § 290..........................................................................6

NYS Finance Law § 163..............................................................................7

NYS Finance Law §§ 186-194.....................................................................16

NYS Finance Law §188(6)...........................................................................19

NYC Finance Law §188 (8)..........................................................................19

NYS Finance Law § 191...............................................................................11, 16

PAL § 2857....................................................................................................8

PAL § 2879....................................................................................................7

## PRELIMINARY STATEMENT

Defendant New York City School Construction Authority ("SCA") submits this memorandum of law in opposition to Plaintiffs/Relator Frances Aldana's motion to file a second amended complaint (ECF No. 6) in this *qui tam* or False Claims Act action.[1] The motion should be denied because the proposed Second Amended Complaint (the "Proposed Complaint") does not cure the pleading deficiencies of the first Amended Complaint ("FAC"), which similarly did not cure the deficiencies of the original Complaint. The Proposed Complaint still fails to (i) state a claim on which relief can be granted, as required by Federal Rule of Civil Procedure ("FRCP") 12(b)(6); or (ii) plead fraud with the particularity required by FRCP 9(b). Therefore, filing the Proposed Complaint would be futile and merely delay SCA's filing of a successful motion to dismiss.

## THE PARTIES

The caption of the original Complaint named the USA and "New York *ex rel.* Frances Aldana" as Plaintiffs/Relator (without indication whether "New York" referred to New York City and/or State). ECF No. 1. The Complaint named SCA as the sole defendant. *Id.* The Amended Complaint changed the caption to add as plaintiffs the United States of America ("USA"), New York State ("NYS"), and the City of New York ("City"). ECF No. 6. The Amended Complaint added as defendants Velocity Architecture & Engineering Group, D.P.C. ("Velocity"), Bravo VBC Group, LLC ("Bravo"), and John Does I-X. *Id.*

---

[1] The False Claims Act, 31 U.S.C. § 3729 *et seq.*, was enacted in 1863 to stop massive frauds perpetrated by large contractors during the Civil War, which hampered the United States' war effort. *United States ex rel. Escobar v. Universal Health Servs.*, 842 F.3d 103, 106 (1st Cir. 2016).

The Proposed Complaint drops the City as a plaintiff; adds Relators Jesenia Polanco ("Polanco"), Justina Cussino ("Cussino"), and Deena Lettas ("Lettas"); and removes defendants Bravo, Velocity, and John Does I-X; leaving SCA as the sole defendant. ECF No. 40, Exhibit A.

### STATEMENT OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT AND PROPOSED COMPLAINT

#### A. SCA's Sources of Funding/Budget

The sources of funding for SCA's capital costs during 2010-2022 are alleged to be NYS and the Federal Emergency Management Agency ("FEMA"), for schools damaged during Superstorm Sandy. *See generally* FAC ¶¶ 10-13; Proposed Complaint ¶¶11-14; 37-41. The Proposed Complaint adds allegations of SCA's estimate of the value of projects assigned to Bravo and 24 other contractors, regarding which SCA "either misrepresented and/or grossly underestimated" the amount of work SCA expected to assign to these contractors, or SCA "failed to properly record the payments" to these contractors. Proposed Complaint ¶¶42-88.

#### B. SCA's Operations

The Proposed Complaint adds voluminous new allegations describing many of SCA's "tracking systems," including Oracle; databases; projects; and project management tools. *See generally* ¶¶ 15-36.

#### C. Original Plaintiff-Relator Frances Aldana

Starting in April 2013, Aldana worked for SCA as a Management Specialist responsible for reviewing Proposal Authorization Requests (herein, "PARs"), which include descriptions of the services provided by architectural firms and the cost of services. FAC ¶ 14-16; Proposed Complaint ¶¶ 125-127. SCA "engaged" in unscrupulous acts including, but not limited to hiring architectural firms whose officers and/or employees were contemporaneously employed by SCA. FAC ¶17; Proposed Complaint ¶128. As an example, Bravo's Vice President is also a

2

mechanical engineer employed by SCA. FAC ¶18; Proposed Complaint ¶128. And the current president of another construction company was the former president and a former trustee of SCA. Proposed Complaint ¶131. That SCA president pressured current SCA leadership and employees to speed up payments to Bravo and other contractors, without adequate review. FAC ¶19; Proposed Complaint ¶¶132-133.

In January 2023, the Director of Operations advised the Operations Managers to generate and remit payments to architectural firms for "fast tracked projects" or "older projects" without the review of Management Specialists. FAC ¶20; Proposed Complaint ¶134. SCA instructed Operations Managers to approve and/or remit payments without quality control. FAC ¶21; Proposed Complaint ¶135.

In April of 2023, Aldana was assigned to work on Velocity's accounts. FAC ¶22; Proposed Complaint ¶136. She recognized resubmitted PARs that had already been approved for payment or that had been previously rejected, specifically Velocity PARs. FAC ¶23; Proposed Complaint ¶¶137-138. In July, Relator emailed the Director of Operations to state that Velocity had been paid twice for the same project and services. FAC ¶25; Proposed Complaint ¶139. On July 14, the Director of Operations and the Chief Contracting Officer called Aldana into a meeting in which they expressed appreciation for Aldana's years of service, and terminated her employment. FAC ¶26-28; Proposed Complaint ¶¶140-142.

On July 20, Aldana contacted the "New York City Department of Investigations for the SCA", which referred her to Nick Scicutella from the Office of the Inspector General for SCA ("SCAIG"). Proposed Complaint ¶144. After reviewing documentary evidence and interviewing employees, SCAIG determined that SCA, Velocity, and Bravo did not commit fraud. FAC ¶30, 32; Proposed Complaint ¶¶146-147, 201-203.

3

In speaking with Relator, SCA employees told her that, in their interviews, they told SCAIG that: (1) fraud was being committed by contractors and provided examples; and (2) that the SCA's Information Technology department has deleted emails at the direction of management. *See* FAC ¶31; Proposed Complaint ¶¶146, 203. Relator further alleges that SCA either: (1) repaid for contractors' services or (2) paid for services not rendered or services that SCA previously rejected at the PAR stage. FAC ¶35; Proposed Complaint ¶210.

Examples of fraud "can be found" on SCA's Authorization to Proceed (herein, "ATP") Jobs Report, in which architectural firms describe proposed work and estimated costs. ¶36; Proposed Complaint ¶211. SCA's Operations Managers will: (1) approve the ATP; (2) deny the request, or (3) amend the ATP by reducing or increasing the amount. FAC ¶38; Proposed Complaint ¶213. One specific example of fraud occurred on July 11, 2022, when SCA paid Velocity $16,499.63 for a job that SCA previously rejected on April 27, 2020, in the same amount. FAC ¶39; Proposed Complaint ¶214. On numerous occasions, Velocity and Bravo resubmitted claims for payment like this example. FAC ¶40; Proposed Complaint ¶215.

New allegations include that a former SCA employee stole money and certain current and/or former employees of SCA were later employed at SCAIG and, therefore, they are not independent or unbiased. Proposed Complaint ¶¶ 204-208.

## D. Proposed Plaintiff-Relator Jesenia Polanco

In 1997, Polanco started employment with the New York City Department of Education ("DOE") as a temporary secretary in the Capital Plan Unit (herein, "CPU"); in 2001, she became a permanent employee; and, in 2010, she transitioned to an SCA employee as an Administrative Assistant. Proposed Complaint ¶¶90-92.

Upon the CPU's transfer to SCA in 2004, Polanco trained the Director and the Manager of Operations (at that time). Proposed Complaint ¶¶96-98. In 2015, the CPU grew into

4

the Capital Plan Management Department ("CPMD"); SCA promoted Polanco to Senior Program Manager; and SCA assigned her to the Special Projects Unit ( "SPU"). Proposed Complaint ¶¶100-101.

Polanco tracked the budgets of DOE and SCA for nearly three decades, and often advised her supervisors that the amounts spent on projects were significantly greater than the proposed budget, and expressed concerns to her supervisors when they told her to create fake Building Identification Numbers and to put expenditures under that category. Proposed Complaint ¶¶103-106.

In 2023, the Director of Operations became Polanco's supervisor. Proposed Complaint ¶107. "Among other things," the Director publicly mocked Polanco's accent. Proposed Complaint ¶109. The same year, Polanco was hospitalized and diagnosed with Functional Neurological Disorder, which impairs Polanco's mobility and speech. Proposed Complaint ¶110. Polanco's neurologist opined that Polanco's disorder was primarily triggered by work-related stressors, *i.e.,* the hostile work environment created by the Director. Proposed Complaint ¶111.

In July 2024, Polanco filed a complaint with SCA's Office of Equal Employment Opportunity ("EEO"). Proposed Complaint ¶112. Immediately thereafter, the Director and the CPMD Vice President gave Polanco a negative performance evaluation and placed her on a performance improvement plan. Proposed Complaint ¶113.

In May 2025, Polanco "downloaded various tracking systems to further investigate Defendant SCA's fraudulent conduct." Proposed Complaint ¶114. Polanco also contacted CPMD's Program Coordinator to gain access to an updated version of Oracle. Proposed Complaint ¶115. In June 2025, Polanco's Microsoft account stopped working. Proposed Complaint ¶116. Two days later, the Director of Operations of the IT Department directed Polanco

5

to return her computer, which she did, and SCA provided her a new one. Proposed Complaint ¶¶117-118. SCA issued the new computer because of Polanco's "request for access to the Oracle system as the [OIG] had been monitoring Relator Polanco's emails." Proposed Complaint ¶119.

Around that time, the Director of Operations told an employee that Polanco's emails were being monitored by OIG and Polanco would be terminated. Proposed Complaint ¶120. Polanco was terminated two months later due to poor performance, although Polanco had previously received positive performance evaluations. Proposed Complaint ¶¶121-122. SCAIG's Scicutella has requested Polanco return her work computer. Proposed Complaint ¶123.

In 2025, the EEO issued a Notice of Right to Sue to Polanco, who then filed an action in this District alleging claims for discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964, the NYS Human Rights Law, NYS Executive Law § 290 *et seq.*, and the City Human Rights Law, New York City Administrative Code §§ 8-101 *et seq.*. *See Polanco v. New York City School Constr. Auth.*, 25-cv-05815 (BMC).

### E. Proposed Plaintiff - Relator Julieta Cussino

In 2021, Cussino was hired as an Operations Manager in the SCA's Real Estate Division. Proposed Complaint ¶¶149-150. In 2022, Cussino and Project Officers identified safety, compliance, and operational deficiencies during site visits at DOE-occupied leased facilities. *See* Proposed Complaint ¶¶151, 153-154. The Project Officers advised Cussino that contractors would fail to complete projects and leave schools in dangerous conditions, but still seek payment from SCA for incomplete work and substandard work. Proposed Complaint ¶152.

Cussino submitted Environmental Hazards reports to a Senior Project Manager and other leadership in the Real Estate Division, the General and Deputy General Counsel for same; and the Vice President of Capital Planning. Proposed Complaint ¶¶ 154-157. Cussino's supervisor and the Senior Project Manager advised Cussino that environmental hazards were not SCA's

6

responsibility. Proposed Complaint ¶158. Shortly thereafter, Cussino was relieved of job responsibilities that required her to perform site visits and denied access to a tracking system. Proposed Complaint ¶159. Meanwhile, SCA "continued to blindly" approve payments to contractors from funds dedicated to complying with the Individuals with Disabilities Education Act and Title I of Every Student Succeeds Act, formerly known as Elementary and Secondary Education Act. Proposed Complaint ¶159.

A few months later, SCA transferred Cussino to SCA's Office of General Counsel. Proposed Complaint ¶161. Cussino assisted Polanco with filing Polanco's 2024 EEO complaint and they "worked together to uncover Defendant SCA's fraud, waste, and abuse." Proposed Complaint ¶¶164-165. Cussino further alleges SCA retaliated against her by: (1) removing job responsibilities; (2) transferring her to different departments; (3) publicly mocking her accent; and (4) threatening her based on her immigration status. Proposed Complaint ¶166. Cussino does not allege SCA terminated her employment, and remains an SCA employee.

## F. Proposed Plaintiff-Relator Deena Lettas

From 2022 to 2025, Lettas worked as Senior Management Specialist in SCA's Business Process & Policy Unit. Proposed Complaint ¶167. In April 2024, Lettas' supervisor requested Lettas draft a "Procurement Manual." Proposed Complaint ¶168. Lettas "noticed that Defendant SCA's contract award and enforcement practices failed to comply with [PAL] § 2879 and [NYS] Finance Law § 163," and so advised her supervisor with respect to the PAL, as it applied to contract awards and enforcement, and the lack of project oversight and quality control. Proposed Complaint ¶¶170, 173-175. Lettas observed SCA awarding Mini Request for Proposals, which is a simplified bidding process, without any written award justifications and without meaningful competition from eligible contract holders. Proposed Complaint ¶171.

7

Lettas's supervisor stated she would report Lettas's concerns to the Director of Enterprise Risk and her own supervisor, but did not do so. Proposed Complaint ¶¶175-176. When Lettas followed up with her about reporting her concerns to leadership, the supervisor accused Lettas of being hostile. Proposed Complaint ¶177. Subsequently, Lettas's supervisor and other members of leadership refused to work with Lettas. Proposed Complaint ¶178. Lettas alleges, as an example, that the employee responsible for the Procurement Manual refused to respond to Lettas's question regarding same. Proposed Complaint ¶179. Lettas's supervisors complained her work was incomplete, but Lettas counters that was due to leadership's refusal to communicate with her. Proposed Complaint ¶180.

Lettas complained to SCA "that she was being retaliated against by her supervisors and leadership, but Defendant SCA refused to conduct and/or conclude its investigation." Proposed Complaint ¶181. As a result of SCA's retaliatory conduct, Lettas resigned. Proposed Complaint ¶182.

## G. **Non-Party and Former SCA Employee Seth Alter**

The Proposed Complaint adds allegations that describe an action in the Southern District of New York filed by a former SCA Investigative Accountant, who asserts claims under 28 USC § 1983, NYS Civil Service Law § 15-b and PAL § 2857. *See generally* Proposed Complaint ¶¶ 187-200, Exhibit A. The Proposed Complaint states that Alter's allegations provide an example of SCAIG's failure to investigate SCA's fraud, concealment of and retaliatory termination of employees investigating fraud. *See generally* Proposed Complaint ¶¶124, 183-200.

## H. **"Specific Examples of Fraud"**

The Proposed Complaint purports to allege "Specific Examples of Fraud." *See generally* ¶¶ 209-252. Under the "Overpayments" heading, Relators repeat two allegations asserted in the Amended Complaint: 1) "Examples of fraud can be found on Defendant SCA's

8

Authorization to Proceed (herein, "ATP) Jobs Report" (Amended Complaint ¶36; Proposed Complaint ¶211); and 2), in July 2022, SCA paid Velocity $16,499.63 "for a job that Defendant SCA previously rejected on April 27, 2020" in the same amount (Amended Complaint ¶39; Proposed Complaint ¶214).

Under the heading of "Improper Utilizations," Relators allege SCA's quintupling the value of a particular contract is an example of SCA unfairly awarding contracts to those who bestow favors upon SCA. *See generally* Proposed Complaint ¶¶ 218-223.[2]

Under the heading of "Closeouts," Relators allege contractors are incentivized to delay closeouts to enable duplicate billing. Proposed Complaint ¶¶224-227.

Under the heading of "Improper Billing," Relators allege that, in 2016, the former employee of a contractor informed an unidentified SCA employee that the contractor's supervisors told the employee that claims not paid by the contractor's clients should be billed to SCA; that, in 2024, SCA's Chief Contracting Officer created an ATP Request for outdated timesheets that removed the requirement for timesheets as documentation; and the official's apparent goal was to pay contractors 70% of their bills without reviewing or verifying documentation. Proposed Complaint ¶¶228-230.

Under the heading of "Management's Undue Influence," Relators allege that an SCA employee pressures other employees to approve payments without documentation or ones that are duplicates, by provoking fear of retaliation. *See* Proposed Complaint ¶¶231-232.

Under the heading of "Overbilling," Relators allege that Velocity created two PARs for additional services in 2026 with a total value of approximately $30,000. *See* Proposed

---

[2] The Proposed Complaint refers to the contractor as a defendant, Proposed Complaint ¶¶220-222, however the contractor is not alleged to be a defendant, nor does the contractor appear in the caption in this action.

Complaint ¶¶234. They further allege that Velocity should have done only one site visit with both architects and engineers present, which coordination would have obviated a second site visit; and Velocity should not have billed for both a senior and second architect's time. Proposed Complaint ¶¶235-240.

Under the heading of "Improper Use of . . . Funds," Relators allege that SCA awards consultant contracts to current SCA employees, and set forth one example of a $200,000 contract. Proposed Complaint ¶¶235-240.

Under the heading of "KPMG", Relators allege that KPMG prepared an audit report regarding SCA's payment authorization process, in which the accounting firm allegedly listed operational and management deficiencies. Proposed Complaint ¶¶243-244. The firm prepared a second report regarding construction project closeouts, which included conclusions that contractors lack sufficient incentives to provide final closeout documents. Proposed Complaint ¶¶245-252.

## CAUSES OF ACTION IN THE PROPOSED AMENDED COMPLAINT

### No. 1: Violations of the Federal False Claims Act

The Proposed Complaint asserts a claim under 31 USC §§ 3729(a)(1)(A) and (a)(1)(B) ("federal FCA") for causing to be presented and/or conspiring to be presented false or fraudulent claims for payment or approval, resulting in the USA significantly overpaying contractors because of SCA's fraudulent conduct, and causing the USA to suffer substantial financial damage. Proposed Complaint ¶¶ 253-257.[3] Relators seek treble damages for the USA and monetary penalties for each false claim. Proposed Complaint ¶278a, f.

---

[3] The Amended Complaint also cited sub-paragraph (a)(1)(C), which imposes liability for conspiracy to commit federal FCA violations. In the Proposed Complaint, Relator dropped the conspiracy provision. *See also* Relator's Memorandum of Law in Support of Motion for Leave to File a Second Complaint, at 3.

### No. 2:  Retaliation in Violation of the Federal False Claims Act

The Proposed Complaint asserts a claim under 31 USC § 3730(h), which prohibits an employer from discharging, demoting, suspending, threatening, harassing, or in any other manner discriminating against an employee in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under the federal FCA.  Proposed Complaint ¶¶258-261.  Relators further allege that SCA retaliated by terminating Relators' employment after Relators engaged in activity protected under the federal FCA, causing economic loss. Proposed Complaint ¶¶258-261.  Relators seek reinstatement with the same seniority status that Relator would have had but for the discrimination, double the amount of back pay, interest on the back pay, and compensation for any special damages sustained, including litigation costs and reasonable attorneys' fees.  Proposed Complaint ¶¶261, 278b, f.

### No. 3:  Retaliation in Violation of NYS False Claims Act

Plaintiffs/Relators assert a claim under section 191 of the NYS Finance Law ("State FCA"), which prohibits an employer from discharging, demoting, suspending, threatening, harassing, or in any other manner discriminating against an employee in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under the State FCA. Proposed Complaint ¶263. Relators allege SCA retaliated against them by terminating Relators' employment, after they engaged in activity protected under the State FCA, causing economic loss.  Proposed Complaint ¶264.

Relators Aldana and Polanco seek reinstatement with the same seniority status that Relators would have had but for the retaliation, double the amount of back pay, interest on the back pay, and compensation for any special damages sustained, including litigation costs and reasonable attorneys' fees. Proposed Complaint ¶265, 278c, f.

11

### No. 4:  Violations of the NYS False Claims Act

SCA caused to be presented or conspired to be presented false and/or fraudulent claims for payment or approval, resulting in NYS significantly overpaying SCA for services, causing NYS to suffer substantial financial damage.  Proposed Complaint ¶¶266-270.  Relators seek treble damages for NYS and a monetary penalty for each false claim.  Proposed Complaint ¶278d.

### No. 5:  Retaliation in Violation of the NYC False Claims Act

Plaintiffs/Relators assert a claim under Local Law 53 of 2005, the New York City False Claims Act, Admin. Code §§7-801 *et seq.* (the "City FCA"), specifically section 7-805, which prohibits an employer from discharging, demoting, suspending, threatening, harassing, or in any other manner discriminating against an employee in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under the City FCA. Proposed Complaint ¶272.  SCA retaliated by terminating Relators' employment after they engaged in activity protected under the City FCA, causing them economic loss, for which Relators seek reinstatement with the same seniority status that Relators would have had but for the discrimination, double the amount of back pay, interest on the back pay, and compensation for any special damages sustained, including litigation costs and reasonable attorneys' fees.   Proposed Complaint ¶¶ 273-274, 278e, 278f.

### No. 6.  Accounting

Plaintiffs/Relators "having used information prepared by SCA in the ordinary course of business - - have established significant discrepancies between SCA's planned budget and payments to contractors."  Proposed Complaint ¶¶275-276.  Therefore, Plaintiffs/Relators demand an accounting from SCA.  Proposed Complaint ¶278.

12

## PROCEDURAL HISTORY

Original Relator Aldana filed the complaint under seal on October 30, 2023. ECF No. 1. In April 2024, Aldana filed an Amended Complaint under seal ECF No. 6. On February 14, 2025, the USA filed notice that the USA and NYS Attorney General declined to intervene in this action ("Declination"). ECF No. 14. This Court then ordered the Amended Complaint (denominated complaint) unsealed and served by Relator, and further ordered the contents of the Court's file remain under seal and not be made public or served except for the Court's Order and the Declination. ECF No. 15. The Court ordered the seal lifted as to all other matters occurring in this action after the date of its Order. *Id.*

Relator served the Amended Complaint upon the SCA on September 10, 2025, and upon Bravo and Velocity. On November 17, 2025, the defendants-contractors moved for a pre-motion conference to dismiss the Amended Complaint. ECF Nos. 35-36. On December 12, 2025, Plaintiffs-Relator moved for leave to amend the Amended Complaint seeking to (1) add Relators Polanco, Cussino and Lettas, (2) add allegations, (3) remove the City as a plaintiff, and (4) remove Bravo and Velocity as defendants. ECF No. 40. The Court granted SCA's motion to extend its time to respond until January 27, 2026. Order, January 15, 2026.

## STANDARD OF REVIEW

Under the FRCP, a court should "freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). The rationale is that a plaintiff "ought to be afforded an opportunity to test [the] claim on the merits" through an amended pleading. *Foman v. Davis*, 371 U.S. 178, 182 (1962). This liberal standard, however, is tempered where motions to amend would be futile; they are made after undue delay, in bad faith or with dilatory motive; they are preceded by repeated failures to cure deficiencies by prior amendments; or they would result in undue prejudice to the non-moving party. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122,

13

126 (2d Cir. 2008) (internal citation omitted). A proposed amendment is futile where it "fails to state a claim" or "where the claim or defense proposed to be added has no colorable merit." *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 250 (S.D.N.Y. 2009) (quote citation omitted).

*Qui tam* complaints are subject to FRCP 9(b), which requires a party "state with particularity the circumstances constituting the fraud." *US. ex rel. Chorches for Bankruptcy Estate of Fabula v. Am. Med Response, Inc.*, 865 F.3d 71, 83 (2d Cir. 2017) (internal citation omitted). Therefore, a relator must (1) plead with such particularity that a defendant can reasonably identify specific false claims that were submitted to the USA. *United States ex rel. O'Toole v. Community Living Corp.*, 2020 Westlaw 2512099 at *9 (S.D.N.Y. May 14, 2020). While Rule 9(b) permits scienter to be averred generally, the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of New York*, 712 Fed. Appx. 27, 29 (quote citation omitted); *see also Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016) (FCA's scienter requirement is "rigorous").

## ARGUMENT

### POINT I

### THE ALLEGATIONS IN THE PROPOSED COMPLAINT ARE WOEFULLY INSUFFICIENT TO STATE A CLAIM UNDER THE FEDERAL OR STATE FALSE CLAIMS ACTS

The voluminous allegations boil down to a decade's worth of criticism, opinion, speculation, and accusations of deficiencies regarding SCA's contract award and payment policies and operations. Relators' allegations can be summarized as complaining that SCA employees and contractors engaged in "unscrupulous acts;" they did not perform their work compliantly or

14

competently; SCA relaxed policies, and/or exercised poor discretion, to expedite or approve certain payments; and SCA tolerated and/or created conflicts of interest between staff and contractors. *See, e.g.*, Proposed Complaint ¶¶120, 128, 134, 204-208.

### A.    Relators' Allegations of Fraud

While Aldana speculates whether entire categories of payments were duplicates or not sufficiently documented , she only provides one example of a supposedly dubious payment, to Velocity. Proposed Complaint ¶136-138. Aldana fails, however, to explain why Velocity was not entitled to payment, *e.g.*, whether the payment was originally rejected, whether the cause of the rejection was cleared up, or why it was later approved and paid. Nor does Aldana identify what policies, regulations, or laws SCA contravened. In addition, the SCAIG investigated her complaints and found no fraud. FAC ¶30, 32; Proposed Complaint ¶¶146-147, 201-203.

Polanco's few allegations are similarly vague and generic, including that she took certain actions to "further investigate" SCA's fraudulent conduct. Proposed Complaint ¶114. The one allegation that is focused is that her supervisors "told her to create fake Building Identification Numbers and to put expenditures under that category." Proposed Complaint ¶¶103-106. But she alleges nothing more.

Cussino's allegations consist of the general criticism that SCA "blindly" approves payments to contractors who would "still seek payment from SCA for incomplete and substandard work." Proposed Complaint ¶¶151-154, 158. Relatedly, she complains that SCA's response to her reports identifying environmental hazards, written in the course of her work, was to inform her that SCA was not responsible for such hazards. Proposed Complaint ¶¶154-158.

Lettas's alleges that her work on a "Procurement Manual" led her, in 2024, to form the opinion that SCA's contract award and enforcement practices did not comply with NYS

procurement law. *See* Proposed Complaint ¶¶170-171, 173-175. However, she fails to provide any specific allegations that support this opinion.

## B. Federal FCA Caselaw

Even with the voluminous, new allegations, the Proposed Complaint fails to state a claim (No. 1) under either 31 USC §§ 3729(a)(l)(A), ¶¶ 253-257,[4] nor a claim (No. 4) under the NYS Finance Law § 191, ¶¶ 266-270.[5] Under section 3729(a)(l)(A), a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" is subject to liability. The scienter requirement refers to a defendant's knowledge and subjective beliefs, not to what an objectively reasonable person may have known or believed. *United States ex rel. Schutte v. SuperValu, Inc.*, 598 U.S. 739, 749 (2023). A person "'must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent.'" *Chorches*, 865 F.3d at 83 (quote citation omitted). A complaint must, at the very least, "provide details of actual bills or invoices submitted to the government" or must "make plausible allegations . . . that lead to a strong inference that specific claims were indeed submitted . . . ." *Id.* at 93.

Critically, the complaint is devoid of any allegations that SCA itself or its contractors presented or submitted any claims to the USA or NYS for money; or any allegations that any such claims were false or fraudulent; or any allegations that SCA knowingly made misrepresentations or omitted information in any claim that were material to the federal government's decision to disburse money. Apparently, Relators rely solely upon their allegations

---

[4] The Amended Complaint also cited to 31 USC § 3729(a)(1)(C), which states one may be liable for conspiring to commit other violations of the federal False Claims Act, but the Proposed Complaint has deleted this citation.

[5] The State FCA, codified at N.Y. St. Fin. Law §§ 186-194, largely tracks the language of the federal FCA. Therefore, courts apply federal case law to the State FCA. *See State of New York ex rel. Seiden v. Utica First Ins. Co.*, 96 A.D.3d 67, 71 (1st Dep't 2012), *lv denied* 19 NY3d 810 (2012). If the same allegations support both the State and City False Claim Acts, then the State- and City-law based claims are subject to dismissal for the same reasons as the federal-law claim. *See Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F.Supp.2d 282, 305 (S.D.N.Y. 2013).

that SCA's Capital budget is funded by the USA, NYS, and the City. *See* Proposed Complaint ¶¶ 11-14.[6] Relators must show that defendants made a claim to the United States government seeking payment from the Federal treasury. *See, e.g., United States ex rel. Pepe v. Fresenius Medical Care Holdings,* 2024 U.S. Dist. LEXIS 198407, *13 (E.D.N.Y., Oct. 31, 2024) (Hall, D.J.); *O'Toole,* 2020 WL 2512099, at *10 ("Plaintiff has failed to allege the submission of any claim-the *sine qua non* of a False Claims Act violation[]") (quotation marks and internal citations omitted). A relator "cannot circumscribe the Rule 9(b) pleading requirements by alleging a fraudulent scheme in detail and concluding, that as a result of the fraudulent scheme, false claims must have been submitted." *United States ex rel. Kester v. Novartis Pharms. Corp. (Kester I)*, 23 F. Supp. 3d 242, 253 (S.D.N.Y. 2014). A complaint's description of a fraudulent scheme paired with information about a defendant's standard billing practice is not enough "particular" information…" *Id.* at 255-256. This pleading requirement "weeds out FCA claims brought by plaintiffs who are merely speculating that false claims might have been submitted to the government" and discourages "the filing of suits as a pretext for the discovery of unknown wrongs." *Id.* at 256.

**C.    SCA Did Not Cause Any Contractors to Submit False Claims**

The Proposed Complaint also fails to allege that the City *caused* contractors to submit any false claims to the federal or state government, which is required for liability under Section 3729(a)(1)(B). Even if Relators had alleged false claims were submitted by the contractors, "the unlawful behavior must be a substantial factor in bringing about [the] filing of a false claim and the filing must be a normal consequence of the situation created by that scheme." *US. ex rel. Arnstein v. Teva Pharmaceuticals USA, Inc.*, 2019 U.S. Dist. LEXIS 35748, at *80

---

[6]  The Proposed Complaint also alleges FEMA reimbursed SCA for restoration costs associated with schools damaged during Superstorm Sandy, but no allegations describe any claims or invoices submitted by SCA to FEMA with respect to a school or Superstorm Sandy.

17

(S.D.N.Y. Feb. 27, 2019) (quote citation omitted). At most, the Proposed Complaint asserts that certain policies, the application of policies, and/or decisions by agency staff and/or officials made it possible for others to commit fraud, but the complaint fails to allege that these actions were the proximate cause for false claims, or violated policies or regulations or law, or were not within the SCA staff and officials' discretion. Relators allegations mainly constitute suspicions. Even if credited, their allegations that certain SCA policies and practices contributed to waste and were susceptible to fraud do not impose liability against SCA under the False Claims Acts. Recognizing that "billing parties are often subject to thousands of complex statutory and regulatory provisions," the Supreme Court has mandated courts to strictly enforce the FCA's rigorous materiality and scienter requirements to ensure that the FCA does not become "a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 579 U.S. at 192-194.

Relators' allegations that they notified SCA of the alleged fraud, likewise, do not save their claims. "Mere awareness of [Relators'] allegations" of fraud is not equivalent to SCA having actual knowledge of the contractors' fraud. *Escobar*, 842 F.3d at 112 (holding that "mere awareness of allegations concerning noncompliance with regulations is different from knowledge of actual noncompliance"); *see also US. ex rel. Foreman v. AECOM*, 19 F.4th 85, 115 (2d Cir. 2021) (holding that the actual knowledge of a defendant's non-compliance cannot be imputed to the government on the basis of relator's allegations: "the relator's allegations are just that - allegations, and the government may not necessarily have knowledge of all the material facts.").

Finally, the decision to knowingly submit a false claim carries the risk of civil and criminal penalties. *See, e.g., Escobar*, 579 U.S. 176, *supra* ("Congress also has increased the [FCA's] civil penalties so that liability is 'essentially punitive in nature.'"). Even if it were determined that contractors did, in fact, submit false claims, it was not a "normal consequence" of

SCA's purported inaction or neglect. Such (in)actions would not *cause* them to submit false claims.

## POINT II

### SCA CANNOT BE LIABLE UNDER THE STATE OR CITY FCA

The Proposed Complaint is also futile because a claim under the State FCA does not lie. SCA is not a "person" who may be liable under the state statute, because local governments are not "persons" under the law. *See* State Finance Law §188 (8). The SCA, as a "local public benefit corporation " is defined to be a "local government." State Finance Law §188(6). For that threshold reason alone, claim 4 would be dismissed.

## POINT III

### THE PROPOSED COMPLAINT DOES NOT STATE RETALIATION CLAIMS UNDER ANY OF THE FALSE CLAIMS ACTS

In order to state a claim for retaliation, a plaintiff-employee must show that: "(1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity." *Chorches*, 865 F.3d at 95. The test for determining whether an employee's conduct was protected is whether: "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government." *Lawrence*, U.S. Dist. LEXIS 120804 at *6. The False Claims Act's anti-retaliation provision covers "retaliation against not only those who actually file a *qui tam* action, but also against those who plan to file a *qui tam* that never gets filed, who blow the whistle internally or externally without the filing of a *qui tam* action, or who refuse to participate in the wrongdoing." *Chorches,* 865 F.3d at 97 (quoting section 3730[h][1]). Relators' retaliation claims fail for the

19

same reason their claims of substantive violations fail: their allegations are vague and conclusory. They merely make allegations that some employer action was followed by termination (or, with Cussino, some other actions). They assert no fraud theory and they assert no retaliation theory.

## A. Aldana

Aldana's sparse allegations are that she emailed the SCA Director of Operations to state that Velocity had been paid ($16,499.63) twice for the same project and services. Proposed Complaint ¶139. Aldana was terminated the same month. Proposed Complaint ¶140-142. Notably, her contact with the SCAIG, which prompted SCAIG's investigation, occurred after termination. Proposed Complaint ¶¶146-147, 201-203.

## B. <u>Polanco</u>

Polanco's allegations merely set forth her employment history, her supervisor's comment about her accent, Polanco's medical diagnosis; her negative performance evaluation; her EEO complaint; her attempts to "further investigate" fraud; and her termination, apparently in 2025, due to poor performance. Proposed Complaint ¶¶107-122.

## C. <u>Cussino</u>

Cussino's allegations of retaliation are that SCA retaliated against her by (1) removing job responsibilities to perform site visits and denying access to a tracking system; (2) transferring her to a different department; (3) publicly mocking her accent; and (4) threatening her based on her immigration status. Proposed Complaint ¶¶159, 164-165. The prayer for relief does not distinguish Cussino, who is still employed by SCA, from the other Relators. Notably, Cussino's allegations of employer actions leave one to assume they were adverse. The actions, *e.g.*, transfer, could be neutral, positive, or adverse.

### D. Lettas

Lettas's allegations are that her work on a "Procurement Manual" led her, in 2024, to form the opinion that SCA's contract award and enforcement practices did not comply with NYS procurement law. *See* Proposed Complaint ¶¶170-171, 173-175. Lettas alleges she told her supervisor about her concern that SCA's contract award and enforcement practices did not comply with NYS procurement law. *See* Proposed Complaint ¶¶170-171, 173-175. When the supervisor did not follow through with a representation that Lettas's concerns would be escalated; Lettas followed up with the request for escalation; her supervisor accused Lettas of being hostile; Lettas's colleagues became uncooperative; her supervisors complaint her work was incomplete; and Lettas resigned "[a]s a result of SCA's retaliatory conduct." *See* Proposed Complaint ¶¶175-182. Lettas supplies no dates or further details.

Collectively and individually, Relators allegations are so lacking in detail – dates, names, motivation, consequences - that their incorporation into a newly filed complaint would be futile. The allegations of protected activity are minimal, ambiguous, or non-actionable criticism. SCA was aware Relators had complaints, but Relators' claims do not specify in any way that they are related to fraudulent *submissions for payment from the federal government.* Relators' complaints about SCA's contract award and enforcement policies and practices do not constitute FCA-protected activity. *See, e.g., Lawrence v. Int'l Bus. Mach. Corp.*, U.S. Dist. LEXIS 120804 at *24 (S.D.N.Y. Aug. 1, 2017) (no protected activity where Plaintiff's "internal complaints" about the quality of employer's internal controls did not describe a concern employer defrauded Fannie Mae by filing false claims). Even assuming Plaintiffs/Relators allegations are true, they do not present the elements of fraud or scienter attributable to SCA. Nor do Relator's quantify the purported "substantial financial damage" to the USA.

21

Most importantly, Relators allegations do not show SCA terminated (or made adverse decision with respect to Cussino) as a result of their actions related to fraud against the federal, state, or City government. The *Mt. Healthy* defense "prevents an employee who engaged in unprotected conduct from escaping discipline for that conduct by the fact that it was related to protected conduct." *Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The defense applies even if the protected activity influenced the decision. *See Anemone v. Metro. Trans. Auth.*, 629 F.3d 97, 118 (2nd Cir. 2011) (*Mt. Healthy* defense "is not altered by the fact that [the supervisor] has acknowledged that the alleged protected speech affected his decision to terminate [plaintiff]"); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (dismissal of retaliation claim warranted even if conduct had been motivated by both proper and improper reasons under *Mt. Healthy*.) Relators have not alleged that SCA would not have taken the same action even if they had not engaged in the protected activity. *See Mt. Healthy*, 429 U.S. at 287. Relators allege they received poor performance evaluations and/or had conflict with colleagues and/or supervisors. *See id.* (Defendant can demonstrate "by a preponderance of the evidence that [the employer] would have taken the same adverse employment action 'even in the absence of the protected conduct.'").

## POINT IV

### THE PROPOSED COMPLAINT FAILS TO STATE A CLAIM FOR AN ACCOUNTING

Relators "demand an accounting from SCA," apparently to confirm "significant discrepancies between Defendant SCA's planned budget and payments to contractors." Proposed Complaint ¶276. Relators cite no provision(s) of the federal or state FCAs that set forth the elements of a claim for an accounting. Nor is an accounting a claim under the common law. It is a form of equitable relief. *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 2023 U.S. Dist. LEXIS

22

140674, *90 (S.D.N.Y. July 14, 2023); *Hopkins v. Ackerman*, 2023 N.Y. Misc. LEXIS 1832, *14. Therefore, SCA interprets these allegations as part of the Relators' prayer for relief.

A party has standing to seek an accounting only if "he or she can establish 'the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest'" *LMEG Wireless, LLC v Farro*, 190 AD3d 716, 720 (2nd Dep't 2021) (internal citation omitted). The elements of a cause of action to recover damages for breach of fiduciary duty are "'(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct'." *Village of Kiryas Joel v County of Orange*, 144 AD3d 895, 898 (2nd Dep't 2016) (quote citation omitted). Relators must have pled facts sufficient to allege the existence of a fiduciary relationship. *See, e.g., Feiner v. Ostreicher*, 241 AD3d 1281, 1282-1283 (2nd Dep't 2025). None of the Relators have alleged a fiduciary relationship existed between them and the USA, NYS or SCA, nor may such a relationship be inferred from the allegations. Nor have Relators cited any provision of the State or Federal FCA that provides an accounting as a form of relief to relators who allege retaliation for protected activity.

23

## CONCLUSION

It would be futile to allow another amendment, and, thus, SCA, respectfully, requests this Court deny Relator's motion for leave to amend the complaint a third time and dismiss the Amended Complaint with prejudice. *See, e.g., TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014). SCA further requests the Court grant SCA such other and further relief as the Court deems just and proper.

Dated:      New York, New York
             January 27, 2026

                          MURIEL GOODE-TRUFANT
                          Corporation Counsel of the
                           City of New York
                          Attorney for Defendant
                          New York City School Construction Authority
                          100 Church Street, Room 2-167
                          New York, New York 10007
                          (212) 356-4367

By:          _____
                        Belina Anderson
                        Assistant Corporation Counsel

TO:    By ECF to all counsel of record

24

## CERTIFICATION OF WORD COUNT

I, hereby, certify pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York that the total number of words in the foregoing document, exclusive of the caption, index, table of contents, table of authorities, and signature block, but inclusive of footnotes or endnotes, is 6,748 according to the "Word Count" function of Microsoft Word 2010, the word-processing system used to prepare the document, and thus that the document complies with the word count limit set forth in Rule 7.1(c).

Dated:     New York, New York
           January 27, 2026

By:    _____
       Belina Anderson
       Assistant Corporation Counsel

25